UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Trenton Kashima

Attorneys Present for Defendants:
Kent Raygor
Sacha Henry

**Proceedings:**      PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 147, filed on November 21, 2025)

DEFENDANT EQUINOX HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (Dkt. 151, filed on November 21, 2025)

## I.     INTRODUCTION & BACKGROUND

On August 7, 2020, plaintiff Jason Rothman ("Rothman") filed this class action complaint in Los Angeles Superior Court against defendant Equinox Holdings, Inc. ("Equinox") and Does 1 through 100. Dkt. 1-1. Defendant removed the action to this Court on October 23, 2020. Dkt. 1. In brief, plaintiff alleges that defendant's membership agreement with members of its Equinox branded fitness clubs (the "Equinox clubs") contains false and misleading representations that members would receive monetary refunds of any prepaid membership dues for periods during which the Equinox clubs are closed, but that Equinox failed to issue monetary refunds when Equinox clubs were closed due to the COVID-19 pandemic.

Plaintiff's complaint asserted five claims for relief for violations of California's unfair competition, false advertising, and consumer protection statutes: (1) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.* ("FAL"); (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

(3) unlawful business practices within the meaning of the California Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); (4) unfair business practices within the meaning of the UCL; and (5) deceptive business practices within the meaning of the UCL.

On October 30, 2020, defendant filed a motion to dismiss each of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 8. On January 13, 2021, the Court granted defendant's motion to dismiss each of plaintiff's CLRA, FAL, and UCL claims based on defendant's alleged misrepresentations. Dkt. 14. The Court also granted defendant's motion to dismiss plaintiff's claim under the UCL's "unlawful" prong to the extent premised on violations of the CLRA or FAL, but denied the motion with respect to plaintiff's claim premised on a violation of California Civil Code § 1749.5. Id.

On January 22, 2021, plaintiff filed his operative first amended complaint. Dkt. 15 ("FAC"). The FAC asserts the same five claims for relief for violations of the CLRA, FAL, and UCL that were previously alleged in the complaint. Id.

On February 12, 2021, defendant filed a motion to dismiss the first amended complaint. Dkt. 18 ("Mot."). On April 27, 2021, the Court denied defendant's motion to dismiss except with respect to plaintiff's claim for punitive damages in connection with his CLRA claim. Dkt. 25.

On October 15, 2024, following parties' stipulation, dkt. 93, the Court granted plaintiff's motion for class certification and for appointment of class counsel and class representative. Dkt. 95.[1]

---

[1] The Court certified the following class (the "Class"):
>All Equinox members with a Home Club in California, whose Membership Agreement included the Refund Clause, and who did not receive a refund of prepaid membership dues for any period during which Defendants' Equinox-branded Fitness Clubs were closed.
>Excluded from all of the above-defined putative classes ("Classes") are: (1) Defendant and any entity in which Defendant has or had a controlling interest; (2) the officers and directors of Defendant at all relevant times, the members of Defendant's officer's and director's immediate families and their legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

On November 21, 2025, plaintiff filed the instant motion for partial summary judgment.  Dkt. 147 ("Mot. by plaintiff").  Plaintiff concurrently filed a statement of uncontroverted facts, dkt. 149, a request for judicial notice, dkt. 148, exhibits and declarations, dkt. 147-2 to 147-8.  On December 15, 2025, defendant filed an opposition, dkt. 167 ("Opp. by defendant"), along with a statement of genuine disputes of material facts. Dkt. 165.  On January 16, 2026, plaintiff filed a reply, dkt. 175 ("Reply by plaintiff"), as well as a response to defendant's statement of genuine disputes and additional material facts, dkt. 176.  The response addresses the 43 facts asserted by plaintiff, dkt. 176 at 1-43 ("Resp. 1 by plaintiff"), and the 100 additional facts independently asserted by defendant in opposition to plaintiff's motion, dkt. 176 at 43-107 ("Resp. 2 by plaintiff").

On November 21, 2025, defendant filed the instant motion for summary judgment, or, in the alternative, partial summary judgment.  Dkt. 151 ("Mot. by defendant"). Defendant concurrently filed a statement of uncontroverted facts, dkt. 152, a request for judicial notice, dkt. 153, exhibits and declarations, dkt. 151-1 to 2.  On December 15, 2025, plaintiff filed an opposition, dkt. 163 ("Opp. by plaintiff"), along with a statement of genuine disputes of material facts. Dkt. 165.  On January 16, 2026, defendant filed a reply, dkt. 173 ("Reply by defendant"), as well as a response to plaintiff's statement of genuine disputes and additional material facts, dkt. 174.  The response addresses the 84 facts asserted by defendant, dkt. 174 at 1-44 ("Resp. 1 by defendant"), and the 36 additional facts independently asserted by plaintiff in opposition to defendant's motion, dkt. 174 at 44-73 ("Resp. 2 by defendant").

On January 26, 2026, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

---

representatives, heirs, successors, or assigns; and (3) any judge to whom this action is assigned and any members of such judges' staffs and immediate family members.
Dkt. 95 at 2.  Plaintiff Jason Rothman was appointed as class representative.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                      **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

### A.    Equinox's Business

Founded in 1991, Equinox owns and operates fitness clubs nationwide.  At the start of the COVID-19 pandemic in 2020, Equinox operated 33 clubs in California, including clubs at 300 East Colorado Boulevard, Pasadena (the "Pasadena Club") and 207 Goode Avenue, Glendale (the "Glendale Club").  Resp. 1 by defendant ¶ 1.

Equinox offers individual and corporate club memberships at different tiers, depending on the customer's desired access level.  These access levels vary from state to state but generally include access to just a single health club ("Select Access") or to multiple locations throughout the state or country ("All Access" or "Destination Access"), with prices varying by the type of access.  Id. ¶ 2.

All levels of Equinox membership provide members with access to on-site club facilities, as well as ancillary health and wellness offerings on a club-to-club basis, for example, stationary cycling, group fitness classes, boxing and martial arts classes, spa services, and Pilates sessions.  Members also can purchase personal training sessions for an additional fee.  Id. ¶ 3.

To join Equinox, customers sign a written Agreement ("Agreement" or "Membership Agreement") that sets forth, inter alia, the pricing for the membership, club rules, regulations, payment obligations, membership freeze and cancellation terms, and descriptions of what is offered.  Id. ¶ 4.

Although Equinox's Agreements have varied over time, they generally include a member's identification number, membership access level, obligation dates, and home club information.  Id. ¶ 5.

Under the terms for the Membership Agreement, Equinox Members prepaid for access, either on a monthly basis or for a full term.  Resp. 1 by plaintiff ¶ 8.

The Membership Agreement is between the member and a "Home Club" (the Club with which a member signed their Membership Agreement).  Id. ¶ 10.

The parties dispute whether Equinox used template Membership Agreements to create the Membership Agreements entered into by Class members.  Id. ¶ 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

### B.    Plaintiff's Agreement with Equinox

On December 7, 2017, Rothman entered into a "Select Access" Agreement with Equinox.  Resp. 1 by defendant ¶ 13; dkt. 154-23 ("Rothman's Agreement" or "Plaintiff's Agreement" or "Plaintiff's Membership Agreement").

Plaintiff's Agreement was with "Equinox Fitness Pasadena, Inc. d/b/a Equinox Fitness Club located at 300 E. Colorado Blvd, Pasadena, California 91101" and was for use of the Pasadena Equinox location at 300 E. Colorado Blvd, Pasadena, California 91101.  Resp. 2 by defendant ¶¶ 2-3.

The first page of Rothman's Agreement with Equinox showed the pricing terms: an initial fee of $299.84 plus monthly dues of $169.  Resp. 2 by plaintiff ¶ 94.

Plaintiff's Agreement does not include the exact language required by NY Gen. Bus. Code, § 622-a(13).  See Resp. 2 by defendant ¶ 5.

Equinox included California's statutory-mandated cancellation notices (CAL. CIV. CODE §§ 1812.80(b), 1812.81) in Rothman's Agreement.  Resp. 1 by defendant ¶ 6.

Section 2(e) of Rothman's Agreement states: "If the services of the Club cease to be offered as stated in this Agreement." If the contract is cancelled: "All monies, including prepaid amounts, paid pursuant to the Agreement cancelled for the reasons in this paragraph shall be promptly refunded (including amounts for use of the facilities and services during the thirty (30) day written notice period), and further provided, that the Club may demand the reasonable cost of goods and services which the Buyer has consumed or wishes to retain after cancellation of the Agreement . . . ." Id. ¶ 67.

The parties dispute whether Section 2 of Rothman's Agreement addresses all circumstances when Equinox shall refund prepaid dues.  Id. ¶ 67.  Plaintiff contends that "[n]othing in Section 2 … suggests that it is the exclusive [provision] under which a person would receive a refund," given that Section 2 is titled "ADDITIONAL RIGHTS TO CANCELLATION." Id.; Rothman's Agreement.

The parties dispute the relevance of Section 26 of Rothman's Agreement to plaintiff's claims.  Section 26 states: "complimentary gift cards … may be distributed at the discretion of Equinox and have no cash value. Only members with an active account

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

in good standing may redeem complimentary items in accordance with their terms and complimentary items become null and void upon termination or expiration of membership for any reason."  Id. ¶ 74.

Rothman's Agreement also contains the following clause ("Payment Notice" or "Refund Clause"):

>>THIS NOTICE PROVIDES IMPORTANT INFORMATION ABOUT YOUR PAYMENT OPTIONS<<

Buyer may make payments on an installment basis or in a single payment. Paying the full amount may be less expensive, but may involve financial risk for Buyer. Read this notice carefully before making a decision. In deciding whether to make payments on an installment basis, Buyer should be aware that if the Club closes, although the Club will remain legally liable to Buyer for a refund, Buyer may risk losing his or her money if the Club is unable to meet its financial obligations to Members.

Id. ¶ 82; Rothman's Agreement (emphases omitted).

The Payment Notice appears in large, bold font on the second page of Rothman's Agreement.  Resp. 1 by defendant ¶ 10.

The parties dispute whether the Payment Notice was removed from certain Membership Agreements between June 2018 and December 2018.  Resp. 1 by plaintiff ¶ 13.

Rothman's Agreement further states that the "contract only may be modified in writing executed by a duly authorized representative of Equinox."  Resp. 2 by plaintiff ¶ 96; Rothman's Agreement.

Rothman reviewed his entire Agreement before signing it and understood that the Agreement would govern his relationship with Equinox, that he would be bound by it, and that it would govern all of his rights and remedies.  Resp. 2 by plaintiff ¶¶ 14-15.

In March 2018, Rothman began working in Glendale and opted to change his membership from the Pasadena to the Glendale Club.  Id. ¶ 59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title    | Jason Rothman v. Equinox Holdings, Inc. | | |

### C.    Impact of COVID-19 on Equinox Memberships

President Trump declared that "the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020." Resp. 1 by defendant ¶ 16.

On March 4, 2020, Governor Newson proclaimed a state of emergency in California, finding that COVID-19 posed a critical threat to public health and safety. Id. ¶ 17. The same day, the Los Angeles County Department of Public Health declared a local state of emergency. Id. ¶ 18.

On March 12, 2020, California declared a continued state of emergency in Executive Order N-25-207 due to the COVID-19 pandemic. Id. ¶ 19.

On March 16, 2020, Los Angeles County, the City of Los Angeles, Glendale, and Pasadena issued stay-at-home orders including "gyms and fitness centers," thereby mandating the immediate closure of Equinox club operations in Los Angeles County. The orders did not specify how long gyms and fitness centers would be closed. Id. ¶¶ 20-23.

On March 16, 2020, Equinox notified its California members that it was shutting down its fitness clubs in California due to the COVID-19 pandemic and government orders. Id. ¶ 24.

A March 17, 2020 internal email to Equinox's club general managers and assistant general managers stated:

Hello, As you work through member emails, I wanted to provide some bullet points that may be helpful. Please use where it makes sense. … • Your membership will be put on freeze at no cost as of the day the club closed. No further action is required to freeze. Any existing freezes will be honored as requested. • You will receive a credit to your Equinox account for unused membership time when the club re-opens. • If a scheduled session was cancelled due to the club closure you will receive a credit to your account. • We will extend the expiration date of any unused packages and gift cards. • Each case is unique and we will be in contact with more specific details soon.

Resp. 1 by plaintiff ¶ 19 (line breaks omitted); dkt. 147-2, Ex. G.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

A March 18, 2020 internal email to Equinox's club general managers and assistant general managers stated:

> Hello, We are updating the attached SOP [Standard Operating Procedures] re: Account Management while the clubs are closed. The change is to the following question: Will we honor unused time from March? • We are *currently* not refunding any unused time. Please do not commit to a refund. • We will credit unused time from March in a manner to be determined. • Once we re-open we will update the members on how the unused time will be credited. We realize you have many members inquiring about how their accounts will be handled and your queues are growing rapidly. At this time we ask that you hold off on responding to members requesting a refund or clarification on how unused time will be handled. We are working to align on final answers and need the time to get it right, at which time we will update you. If you have already made a specific commitment to a member there is no reason to reach back out until a final decision is communicated. Stay tuned and thank you for being flexible while all this comes together – its [sic] deeply appreciated.

Resp. 1 by plaintiff ¶ 20 (emphasis in original) (line breaks omitted); dkt. 147-2, Ex. H.

A March 20, 2020 internal email to an Equinox employee included the following language:

> ◦ Please communicate with your department heads that there will be no refunds processed at this time. … "What should I do if a member requests a refund? We are not offering refunds at this time. Please use the script below to notify members: *Like most we're navigating unprecedented times and are making sense of how to best manage a complex business. While we assess, we are not issuing refunds.*

Resp. 1 by plaintiff ¶ 21 (emphasis in original) (line breaks omitted); dkt. 147-2, Ex. I.

On March 19, 2020, Governor Newsom ordered all individuals to "stay home or at their place of residence" except those needed for critical infrastructure sectors.  Resp. 1 by defendant ¶ 25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

On March 19, 2020, the County of Los Angeles Department of Public Health issued an order requiring that all individuals to "stay home or at their place of residence" except those needed for critical infrastructure sectors. Id. ¶ 26.

On March 21, 2020, California issued another Executive Order about the continuing state of emergency. Id. ¶ 27.

In late March 2020, Equinox informed its members, including Rothman, that they could use the Equinox App, included within members' membership, to participate in online fitness classes at no additional cost. Id. ¶ 28.

The County of Los Angeles issued a continuing stay-at-home order on April 10, 2020. Id. ¶ 29.

Rothman complied with the County of Los Angeles's stay-at-home order and barely left the house in March 2020 to avoid bringing COVID-19 into the home. Id. ¶ 30-31.

California permitted certain counties to begin lifting stay-at-home orders beginning May 4, 2020 per Executive Order N-60-20. Id. ¶ 33.

The County of Los Angeles stay-at-home orders remained in effect until June 12, 2020. Id. ¶ 34.

Equinox did not charge plaintiff any membership dues between April 1, 2020 and June 24, 2020. See id. ¶ 35.

Equinox issued credits to its members for the period of March 17-31, 2020; however, the parties dispute whether such credits were "gift credits" that constituted a "customer service gesture" (defendant's position), or whether they were compensation that Equinox was obligated to pay members for "unused membership time" (plaintiff's position). See id. ¶ 36.

The parties dispute whether, in April 2020, defendant instructed its staff to inform its staff to start issuing refunds in "[v]ery very very very rare" circumstances, but to deny refunds if "there's no clear strong case." Resp. 1 by plaintiff ¶ 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

The parties dispute whether, in June 2020, defendant "announced" that the unused March dues would be refunded through "Gift Cards" for "ancillary" services and could not be used for membership dues. Id. ¶ 22.

The parties dispute whether defendant had a policy to slow refunds (if they were granted at all). See id. ¶ 24.

The credits Equinox gave to members who had prepaid their dues for March 2020 were equal to the amount of dues paid for the period in March 2020 (i.e., March 17-31, 2020) when the clubs were temporarily closed due to the pandemic. See id. ¶ 25. Equinox contends that it did not have an obligation to refund such dues but issued the credits as a customer service gesture. Id.

On June 13, 2020, Equinox wrote to Glendale Club members informing them that it was reopening on June 17, 2020, members' first billing would resume on June 25 and "cover the period of June 17 to July 31st," and that members would receive the credit described above for March in the Equinox App. Id. ¶ 37.

The parties dispute whether Equinox had a contractual obligation to provide Rothman with a refund for periods during which the clubs were closed due to the COVID-19 pandemic. Equinox contends that it has no obligation to provide such a refund, and even if it did, Equinox argues that it has already refunded plaintiff. By contrast, plaintiff argues that Equinox has failed to provide him with a refund that he is entitled to. The parties rely on the following events to support their respective positions.

On June 16, 2020, Equinox issued Rothman a credit of $84.19. Resp. 1 by plaintiff ¶ 31. The credit had an expiration date of November 19, 2020. Id. The parties dispute whether, per his Agreement, Rothman's credit had "cash value" and dispute whether Rothman paid anything for the credit. Equinox contends that it had no contractual obligation to provide the credit; rather, Equinox argues that the credit was a customer service gesture. Resp. 1 by defendant ¶ 38-39.

On June 25, 2020, Equinox charged plaintiff $262.53 for membership dues for June 17, 2020 to July 31, 2020. See Resp. 1 by plaintiff ¶ 30.

On June 25, 2020, Rothman complained to Equinox via email about the $84.19 credit and the charge for June 17, 2020 to July 31, 2020. Resp. 1 by defendant ¶ 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Specifically, Rothman's email stated: "I either need one of the following options: (1) A full credit for the amount charged in the amount of $262.53, and my membership put on hold for a month, or (2) a refund in the amount of my credit in the amount of $84.19." Resp. 1 by plaintiff ¶ 32. Plaintiff's email further stated: "that [sic] $84.19 was from my membership fee and [I] want nothing else then [sic] for to go towards my membership fee. [Applying the credit towards] [t]he August bill will not be sufficient[;] I will need this to be credited instantly." Id. ¶ 33; dkt. 20-3.

The parties dispute whether Equinox fully complied with Rothman's June 25, 2020 requests regarding the $84.19 credit and the membership dues charge for June 17, 2020 to July 31, 2020. Resp. 2 by plaintiff ¶ 41. On July 3, 2020, the Glendale Club's General Manager, Azeem Sheikh ("Sheikh") responded to Rothman in an email stating: "I have placed your membership on freeze for 3 months and requested for a refund for the dues charged on [June 25, 2020]. Due to high volume refunds are taking up to 30 days to be processed." Resp. 1 by plaintiff ¶ 35. Equinox argues that it froze Rothman's membership for three months and applied the $84.19 credit towards his future dues. Resp. 1 by defendant ¶ 70; dkt 18-1, Ex. MM, Declaration of Azeem Sheikh ("Sheikh Declaration") ¶ 13 ("The July 24 resolution of the above-depicted case resulted in the application of the $84.19 from March as a non-expiring credit to Mr. Rothman's dues account."). Equinox contends that Sheikh's response—freezing Rothman's membership for three months and applying the $84.19 credit toward his future dues—fully satisfied Rothman's requests; Equinox argues that Sheikh merely "requested"—rather than promised—a refund be issued to plaintiff. Resp. 1 by plaintiff ¶ 35. By contrast, Rothman contends that Sheik's response promised Rothman a refund within 30 days, not a credit toward his future dues. Id.; Resp. 1 by plaintiff ¶ 35 ("On July 3, 2020, Azeem Sheikh responded, agreeing to refund the $262.53 June/July dues and to place the membership on a three month 'freeze,' but warned that refunds would take 'up to 30 days to be processed.'"); Sheikh Declaration ¶ 10 ("That same day, July 3, in keeping with Mr. Rothman's requests, I submitted instructions to Equinox member services staff to freeze Mr. Rothman's account, refund his $262.53 for June and July, and reissue his $84.19 March credit so that it would apply to his membership dues.").

On July 4, 2020, plaintiff responded to Sheikh via email. Dkt. 20-5. Plaintiff's email to Sheikh requested to continue using the Equinox gyms and requested that his membership should not be placed on hold: "I have gone to the gym a few times and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

would prefer it for my gym membership to not be put on hold. Sorry about this [sic] I know it makes everything more difficult." Resp. 1 by plaintiff ¶ 36; dkt. 20-5.

Plaintiff contends that in this email, he accepted Sheikh's offer of a refund. Resp. 1 by plaintiff ¶ 36. By contrast, Equinox contends that "[n]owhere in [Rothman's July 4, 2020 email to Sheikh] is there anything [that] indicated that Plaintiff had 'accepted the refund.'" Id.

The parties dispute 1) whether there is any written communication between the parties in which plaintiff expressly stated that he no longer was seeking a refund of the $84.19 credit; and 2) whether there is any written communication between the parties in which plaintiff was informed that the promised refund had been canceled by defendant. Resp. 1 by plaintiff ¶¶ 38-39. Equinox contends that because "[p]laintiff still has not produced all documents that he had in his possession, … Equinox cannot confirm th[ese] negative purported uncontroverted fact[s] presented by Plaintiff." Id.

On July 13, 2020, California issued another order again shutting down gyms due to the COVID-19 pandemic. Resp. 1 by defendant ¶ 44.

Accordingly, Equinox again closed several of its California Clubs on July 13, 2020. Resp. 1 by plaintiff ¶ 17. The Glendale Club remained shut down from July 13, 2020 until March 2021. Resp. 1 by defendant ¶ 47.

Between August 1, 2020 and March 2021, Equinox did not charge members at the Glendale Club (including Rothman) any dues. Id. ¶ 48.

**D.     Equinox's Payments to Plaintiff**

On February 12, 2021, Rothman received a payment from Equinox totaling $188.13. Resp. 1 by defendant ¶ 49. That amount exceeded the *pro rata* value of Rothman's membership during the temporary shutdowns due to COVID-19 (calculated as $84.19 for the time the club was shut down from March 17 to 31, 2020 and $100.98 for July 14 to 31, 2020). Id. ¶ 50.

On March 17, 2021, Rothman emailed Sheikh asking for a two-month freeze on his membership until May 2021. Id. ¶ 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Sheikh provided Rothman with his requested freeze; however, the parties dispute whether freeze fees were being assessed during this time period and, accordingly, whether Sheikh "waived" freeze fees for Rothman. Id. ¶ 52.

On May 7, 2021, Rothman also received a refund of $10 from Equinox. Id. ¶ 53.

Between April 2021 and September 2021, Rothman requested successive freezes of his membership from Sheikh. Id. ¶ 54. Sheikh provided Rothman with his requested freezes; however, the parties dispute whether freeze fees were being assessed during this time period and accordingly, whether Sheikh waived the freeze fees for Rothman. Id. ¶ 55.

On November 19, 2021, Rothman requested that Equinox cancel his Agreement, and Equinox complied. Id. ¶ 56.

Rothman has no present intention of re-joining Equinox in the future. Id. ¶ 78.

### E.    Plaintiff's Class-Action Lawsuit

Plaintiff sues Equinox under the FAL, CLRA, and UCL on the theory that he and the class are entitled to monetary refunds for membership dues paid for all periods during which the Equinox clubs were closed, and that Equinox failed to provide such refunds. FAC ¶¶ 1-10. Plaintiff asserts that the Payment Notice in the Membership Agreement misled him and the class by promising them a refund whenever an Equinox club "closes," including during the COVID-19 pandemic. See id. ¶ 47. Defendant disputes plaintiff's claims on the ground that the term "closes" in the Payment Notice refers only to a permanent closure of Equinox's business and does not entitle plaintiff to refunds for temporary COVID-19-related club closures. See mot. by defendant at 19-24.

The parties raise numerous other disputes including whether plaintiff relied on the Payment Notice provision in deciding to join Equinox and whether he has standing to assert his claims. See id. at 17-19; opp. by plaintiff at 15-17.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on his CLRA, UCL, and FAL claims. Mot. by plaintiff at 1. Plaintiff argues that Equinox is obligated to provide him with a refund for all periods during which the Equinox clubs are closed because the plain language of his Membership Agreement with Equinox unambiguously requires as such. Id. at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Plaintiff argues that Equinox—by failing to providing refunds to members when the clubs were closed and adopting a policy of not providing such refunds—breached his Agreement in violation of Section 1770(a)(14) of the CLRA, which provides that it is unlawful to "[r]epresent[ ] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Id. at 13-15. Plaintiff also argues that Equinox's breach of his Agreement violated Sections 1770(a)(4), (5), and (9) of the CLRA, which prohibit "[1] unfair or deceptive acts or practices," such as "[u]sing deceptive representations… in connection with goods or services;" "[2] [r]epresenting that goods or services have characteristics … [and] benefits… which they do not have;" and "[3] [a]dvertising goods or services with intent not to sell them as advertised," respectively. Id. at 15-16.  Plaintiff argues that "the Refund Clause is literally false" and entitles him to summary judgment on his CLRA claim as a matter of law. Id. at 16 (citing CytoSport, Inc. v. Vital Pharms., Inc., 894 F.Supp.2d 1285, 1295 (E.D. Cal. 2012).

Plaintiff further argues that he and the class are entitled to partial summary judgment on his equitable UCL and FAL claims for the same reason that "the Refund Clause is literally false." Id. at 19.

Plaintiff argues that defendant's contract-based affirmative defenses of waiver, accord & satisfaction, modification, novation, impracticability, and impossibility are meritless. Id. at 20-29; 32-33.  Furthermore, plaintiff argues that defendant's equitable defenses of unclean hands and equitable estoppel are meritless. Id. at 29.

In opposition, Equinox argues that because plaintiff has not asserted any common law claim for breach of contract, plaintiff "has the burden on summary judgment of proving by a preponderance of the evidence that a challenged advertisement is deceptive (i.e., false or misleading) under the reasonable consumer standard." Id. at 18-19 (citing cases).  First, Equinox argues that plaintiff's claims under subsections (a)(4), (5), (9), and (14) of the CLRA are all subject to the reasonable consumer standard and that "[n]one of the cases cited by Rothman … stand for the proposition that "a defendant's failure to abide by its contract violates section 1770(a)(14)." Id. at 19-20 (citing cases).

Second, Equinox argues that plaintiff has not presented evidence of deception under the reasonable consumer standard, nor has he presented evidence to establish "literal falsity" of the Payment Notice. Id. at 22.  Equinox contends that "even if the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Court were to [use] the literal falsity [standard] in evaluating Rothman's consumer deception claims," an advertisement is only "unambiguously false" if the advertisement's language is not susceptible to more than one reasonable interpretation. Id. at 23-24 (citing Kwan Software Eng'g, Inc. v. Foray Techs., Ltd. Liab. Co., No. C 12-03762 SI, 2014 WL 572290, at *5 (N.D. Cal. Feb 11, 2014)).  Here, Equinox argues that because the Payment Notice is susceptible to multiple reasonable interpretations, it is not unambiguous and thus plaintiff cannot establish literal falsity. Id. at 24.

As to plaintiff's CLRA claim (Count 2), Equinox argues that plaintiff has not met his burden to prove that the Payment Notice was material and caused plaintiff's injury. Id. at 25 (citing cases).  Equinox argues that because "Rothman's claims here sound in fraud … [he] must prove both his individual and classwide reliance (or otherwise establish the alleged misrepresentation was material on behalf of the class)." Id. at 26. Equinox argues that Rothman has failed to establish that "'payment terms are always considered a material term of a contract.'" Id. at 26-28.  Moreover, Equinox argues that "even if … price [terms were] "always" material under the CLRA as a matter of law … the plain language of the Payment Notice *does not* actually set forth any pricing terms." Id. at 28 (emphasis in original).  Equinox also argues that Rothman's deposition testimony establishes that he did not rely on the Payment Notice and demonstrates that it is not material. Id. at 29-30.

Equinox also argues that because plaintiff has failed to prove that the Payment Notice was "literally false," plaintiff has likewise failed to prove his FAL and UCL claims. Equinox argues that establishing a "'systematic' breach of contract" is not sufficient to establish a violation of the UCL's "unlawful" prong because plaintiff has not alleged a breach of contract claim, nor has he proved a breach of contract claim. Id. at 32.  Moreover, Equinox argues that "courts have repeatedly held that a breach of contract "claim cannot serve as a predicate for an unlawful-prong [UCL] claim" where no other law has been violated." Id. at 32 (citing cases).   As to plaintiff's claim under the "unfair" prong of the UCL (Count 4), Equinox argues that "because Rothman has failed to meet his burden to establish any deception … he also cannot establish 'unfair' conduct." Id. at 33.

In reply, plaintiff reiterates his arguments and maintains that at least with respect to his CLRA Section 1770(a)(14) claim, "both state and federal courts have ruled (at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

summary judgment or trial) that a defendant's conduct can violate section 1770(a)(14) without a factual finding that a reasonable consumer would have been deceived." Reply by plaintiff at 3 (citing Fuentes v. Dish Network L.L.C., 641 F.Supp.3d 801, 812 (N.D. Cal. 2022), aff'd 2024 WL 4234486 (9th Cir. Sept. 19, 2024), and Cellphone Termination Fee Cases, 193 Cal.App.4th 298, 308 (2011)). As to his claim under the UCL's "unfair" prong, plaintiff argues that a "systematic" breach of contract involving consumers is an unfair business practice. Id. at 5 (citing In re Facebook, Inc., PPC Advert. Litig., 282 F.R.D. 446, 460 (N.D. Cal. 2012); Smith v. Wells Fargo Bank, N.A., 135 Cal.App.4th 1463, 1483 (2005)).

The Court finds that plaintiff and the class are not entitled to summary judgment on any claims. Plaintiff moves for summary judgment on the following claims:

1. Untrue, misleading, and deceptive advertising (FAL)
2. Misrepresentation of a product's standard, quality, sponsorship, approval, and/or certification (CLRA)
3. Unlawful business acts and practices (UCL) predicated on the CLRA and the FAL[2]
4. Unfair business acts and practices (UCL)
5. Fraudulent business acts and practices (UCL).

As an initial matter, all of plaintiff's claims are predicated on allegations that defendant made misrepresentations that violated the CLRA, FAL, and UCL. FAC ¶¶ 59, 67, 78, 83. Plaintiff has not asserted any breach of contract claim. Accordingly, the standards and elements applicable to his FAL, CLRA and UCL claims control on summary judgment. Rodriguez v. Countrywide Homes, 668 F. Supp. 2d 1239, 1246 (E.D. Cal. 2009) ("The issues on summary judgment are framed by the complaint"). Thus, plaintiff's contention that establishing that Equinox breached his Agreement suffices to proving his FAL, CLRA, or UCL claims is misplaced. Put differently, even if plaintiff were to establish that Equinox breached his Agreement, this would not

---

[2] Rothman does not move for summary judgment on his UCL claim to the extent that it is predicated on California's Gift Certificate Law, Cal. Civ. Code §§ 1749.45-1749.5. See dkt. 147 at 3 n.1 ("Plaintiff reserves its illegal gift card expiration claims for trial."). Therefore, this theory is not at issue in his summary judgment motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

necessarily establish consumer *deception* sufficient to support his CLRA, FAL, and UCL claims.  See, e.g., Bodenburg v. Apple Inc., 146 F.4th 761, 767-770 (9th Cir. 2025) (analyzing the plaintiff's breach of contract claim separately and explaining that "when interpreting claims under the UCL, CLRA, and FAL, we must focus on the expectations of reasonable consumers"); Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) ("claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test.").

The UCL, FAL, and CLRA each prohibit deceptive and unfair business practices. The UCL prohibits "any unlawful, unfair[,] or fraudulent business act or practice and unfair deceptive, untrue[,] or misleading advertising."  Cal. Bus. and Prof. Code § 17200. The FAL prohibits dissemination of advertising that is "untrue or misleading" and which the defendant knew or reasonably should have known was untrue and misleading.  Cal. Bus. and Prof. Code § 17200. "Any violation of the FAL necessarily violates the UCL." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1016 (9th Cir. 2020) (cleaned up). Finally, "the CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices."  Id. (quoting Cal. Civ. Code § 1770).

Misrepresentation claims brought pursuant to the UCL, FAL, and CLRA are each judged against the same "reasonable consumer" test, which asks whether "members of the public are likely to be deceived" by the alleged misrepresentation.[3]  Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (quoting Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995)).  To succeed on a claim alleging a deceptive or misleading business practice under these statutes, a plaintiff "must show that members of the public are likely to be deceived."  Moore, 966 F.3d at 1017 (quoting Williams, 552 F.3d at 938).

---

[3] See also Cal. Civ. Prac. Business Litigation § 51:1 ("California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) rely on the same objective test, that is, whether members of the public are likely to be deceived. … The reasonable consumer test for claims under California's [UCL, FAL, and CLRA] requires more than a mere possibility that the defendant's product might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner; rather, the test requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.") (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

This standard requires plaintiff to show "more than a mere possibility" that the alleged misrepresentation "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 105 Cal.App.4th 496 (2003)). "Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id.

"California laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." Moore, 966 F.3d at 1017 (internal quotations omitted). In most circumstances, "whether a business practice is deceptive will usually be a question of fact" and therefore an improper issue to decide on summary judgment. See Williams, 552 F.3d at 938. However, "a representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir.2012) (quoting Lavie, 129 Cal.Rptr.2d at 494). The UCL, FAL, and CLRA do not limit claims for misrepresentation to affirmative untrue statements; instead, those statutes prohibit both representations that are false and a broader category of representations that have "a capacity, likelihood[,] or tendency to deceive or confuse the public." Colgan v. Leatherman Tool Grp., Inc., 135 Cal.App. 4th 663, 683 (2003) (internal quotations omitted); see also Williams, 552 F.3d 934 at 938.

The Court finds that there are at least two reasons why plaintiff and the class are not entitled to summary judgment on their claims. First, the evidence indicates that there is a genuine dispute as to whether the Payment Notice is likely to deceive a reasonable consumer as to his entitlements under the Membership Agreement. The Payment Notice states in relevant part:

> In deciding whether to make payments on an installment basis, Buyer should be aware that if the Club closes, although the Club will remain legally liable to Buyer for a refund, Buyer may risk losing his or her money if the Club is unable to meet its financial obligations to Members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Rothman Agreement at 2.

In other words, the Payment Notice is a promise regarding the import of particular factual circumstances, namely that (1) when the Club "closes," members will be entitled to a refund[4] for dues paid; and (2) members may collect such a refund unless the Club is unable to pay for it. See also dkt. 25 at 15. Importantly, however, the meaning of the term "closes" is unclear: The Payment Notice is silent as to whether the term "closes" refers to a permanent closure of Equinox's business in the event that "the Club is unable to meet its financial obligations" (e.g., due to insolvency), or whether "closes" refers to periods during which the clubs are temporarily closed (e.g., as a result of COVID-19 governmental mandates).

Given this uncertainty, there is a genuine dispute as to how a reasonable consumer would understand the Payment Notice and whether he would be deceived by Equinox's failure to provide a refund to members who prepaid membership dues for periods of club closures during the COVID-19 pandemic. Plaintiff has not presented evidence establishing as a matter of law that the Payment Notice is misleading or "literally false" even if Equinox did not refund class members for prepaid dues during pandemic-related club closures. See dkt. 147-2, Ex. H; dkt. 147-2, Ex. I (emails from Equinox management suggesting that Equinox did not issue refunds during club closures during certain periods of the COVID-19 pandemic); CytoSport, 894 F.Supp.2d at 1295 (stating that, in the context of analyzing claims of false advertising under the FAL and UCL, "to show that a statement is literally false, it must be unambiguously false").

Plaintiff's argument that he can prevail on his CLRA Section 1770(a)(14) claim without proving this claim under the reasonable consumer standard is unpersuasive. First, plaintiff's citation to Fuentes v. Dish Network L.L.C., 641 F.Supp.3d 801, 812 (N.D. Cal. 2022), aff'd 2024 WL 4234486 (9th Cir. Sept. 19, 2024) is inapposite. That case involved a CLRA Section 1770(a)(14) claim that was "dependent on [plaintiff's]

---

[4] "A refund is a return of money. This much is plain. And because it is plain, the term may be interpreted by a court without resort to extrinsic evidence." Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd., No. 13CV602 BEN (VPC), 2017 WL 132843, at *3 (D. Nev. Jan. 13, 2017) (citing Black's Law Dictionary (Ninth edition)). See also dkt. 25 at 10 ("a dues credit is not a refund").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

claim for direct violations of the [California Home Solicitation Sale Act (HSSA)]," which "which requires that a contract falling within its scope include information about a buyer's right to cancel and be written in the same language as an oral sales presentation." Id. at 808. Because it was "undisputed" that the defendant's contract violated the HSSA, the Fuentes court found that the defendant had necessarily also violated Section 1770(a)(14) of the CLRA. Id. at 812. Here, however, plaintiff's CLRA Section 1770(a)(14) claim is predicated on Equinox's alleged misrepresentations contained in the Membership Agreement and is not predicated on the undisputed violation of any separate statute. Likewise, Cellphone Termination Fee Cases, 193 Cal.App.4th 298, 308 (2011), involved a CLRA Section 1770(a)(14) claim predicated on violations of California Civil Code, section 1671(d), which prohibits liquidated damages clauses in consumer contracts unless "(1) fixing the amount of actual damages must be impracticable or extremely difficult[] and (2) the amount selected … represent[s] a reasonable endeavor to estimate fair compensation for the loss sustained." Id. at 322. In that case, because the district court had found that defendant's "[early termination fees (ETF)] were unlawful under section 1671, subdivision (d), the court found that Plaintiffs had prevailed on their claims for violations of the CLRA (§ 1770, subds. (a)(14) …." Here, however, Rothman's Section 1770(a)(14) claim is not predicated on Equinox's independent violation of any statute and must be established under the reasonable consumer standard, i.e., whether a reasonable consumer would likely be misled. See Harmon v. Hilton Grp., PLC, 554 F. App'x 634, 636 (9th Cir. 2014) (stating that plaintiff's CLRA Section 1770(a)(4) claim is "without merit" because "[plaintiff's] complaint does not show that he is entitled to relief because it does not adequately allege that the disclosure policy had 'the likely effect of misleading the public.'"") (citation omitted).

Plaintiff is not entitled to summary judgment on his claim under the UCL's "unfair" prong. "Given that the California Supreme Court has not established a definitive test to determine whether a business practice is 'unfair' in consumer cases, three tests for unfairness exist in the consumer context." Kendall v. Bluetriton Brands, Inc., No. 2:20-CV-10511-CAS (Ex), 2022 WL 2789501, at *4 (C.D. Cal. July 13, 2022) (referring to the "Statutory Test", the "Balancing Test" and the "FTC Test"). Regardless of which unfairness test controls, however, courts have applied the reasonable consumer standard in evaluating unfair prong claims premised on allegedly deceptive advertising. See opp. by defendant at 33 (citing Starstone Specialty Ins. Co. v. Avenior Senior Living, LLC, No. 2:24-cv-06768-FLA (BFMx), 2025 WL 3248686, at *10 (C.D. Cal. Oct. 24, 2025)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

("when a plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs, courts have found that the unfair prong cannot survive if the claims under the other two prongs do not survive"); Maxwell v. Unilever United States, Inc., No. 5:12-cv-01736-EJD, 2018 WL 1536761, at *5 (N.D. Cal. Mar. 29, 2018) ("False advertising claims under . . . the fraudulent and unfair prongs of the UCL are governed by the 'reasonable consumer' standard"); Samica Enters. Ltd. Liab. Co. v. Mail Boxes Etc., Inc., 460 F. App'x 664, 667 (9th Cir. 2011)). Here, plaintiff's claim under the UCL's "unfair" prong is premised on the same allegedly false or misleading advertising as his UCL "fraudulent" claim. Accordingly, the reasonable consumer standard governs both claims. It is true, as plaintiff points out, that one California Court of Appeal has suggested that "a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL," plaintiff has not established that Equinox engaged in a "systematic breach" of any contract. Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th 1463, 1483 (2005). However, even assuming that the "systematic breach" standard from Wells Fargo applies and that Equinox's conduct with respect to Rothman breached *his* Agreement, there are genuine disputes as to whether Equinox systematically breached its Agreements with other members. See resp. 1 by plaintiff ¶ 24 (genuine dispute as to whether Equinox "had a policy to slow refunds" for class members; Equinox contending that "[m]any refunds were in fact made."). Accordingly, Rothman is not entitled to summary judgment on his UCL "unfair" claim in any event.

Second and independently, plaintiff and the class are not entitled to summary judgment on any claims because there is a genuine dispute as to whether the alleged misrepresentations in the Payment Notice were material and whether they caused plaintiff's injuries. To establish standing under the UCL and FAL, a plaintiff must demonstrate that he "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; Cal. Bus. & Prof. Code§ 17535. Moreover, a plaintiff must make "a showing of a causal connection or reliance on the alleged misrepresentation." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326. Similarly, a plaintiff seeking to establish statutory standing pursuant to the CLRA must "allege that she relied on the defendant's alleged misrepresentation." Coleman-Anacleto v. Samsung Elecs. Am., Inc., No. 16-CV-02941-LHK, 2016 WL 4729302, at *10 (N.D. Cal. Sept. 12, 2016). Here, although there is evidence that plaintiff relied on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

representations made in the Payment Notice in deciding the sign his Agreement, see opp. by plaintiff at 4-5, there is also evidence that plaintiff did not substantially consider the Payment Notice at all.  See mot. by defendant at 17-19 ("When repeatedly asked why he decided to join the Pasadena Club, Rothman said his decision was based on the club's proximity to his home and its "good amenities" and never once mentioned the Payment Notice as a factor.").  Moreover, "under the CLRA, plaintiffs may prove reliance on a class-wide basis by demonstrating that the allegedly false representations at issue were material."  Barrera v. Pharmavite, LLC, No. CV11-4153-CAS(AGRX), 2016 WL 11758373, at *6 (C.D. Cal. June 2, 2016).  "A misrepresentation is material 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'"  In re 5-Hour Energy Mktg. & Sales Practices Litig., No. ML 13-2438 PSG(PLAx), 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017).  "[W]hether a particular statement is material is an inherently factual question, rarely suited for resolution on a motion for summary judgment."  Id. at *17.  This is the case here, given that there is a genuine dispute as to whether the class representative—Rothman—found the Refund Clause sufficiently material important as to rely on it in deciding to sign the Agreement.  See opp. at 29-30.  Accordingly, plaintiff and the class are not entitled to summary judgment on whether they relied on the Payment in deciding to sign the Membership Agreement such that the misrepresentation caused their injury.

Plaintiff's argument that Equinox's purported breach of the Payment Notice alone establishes that the Payment Notice caused his injuries is unpersuasive and unsupported by authority.  For example, plaintiff's citation to Cappello is inapposite because that case involved a non-misrepresentation-based breach of "contractual privacy protections … in violation of Section 22576 [California online privacy law]."  394 F. Supp. 3d at 1019-21 ("When a plaintiff alleges a different type of unfair competition *not based on a misrepresentation*, however, courts have dispensed with the actual reliance requirement.") (emphases added).  Here, however, all of plaintiff's claims on which he is moving for summary judgment are predicated on Equinox's alleged *misrepresentations* in the Payment Notice, including his UCL "unlawful" claim which is in turn predicated on misrepresentation-based violations of the CLRA and FAL.  Thus, plaintiff has failed to establish that Equinox violated the FAL, CLRA, and UCL because the evidence does not establish as a matter of law that the Payment Notice caused his injuries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Because there are genuine disputes at least as to whether the Payment Notice is likely to deceive a reasonable consumer and whether plaintiff's and the class's reliance on it caused their injury, plaintiff and the class are not entitled to summary judgment on any claims.

**B.      Equinox's Motion for Summary Judgment**

Equinox moves for summary judgment on all of plaintiff's claims.  Mot. by defendant at 2-4.  First, Equinox argues that plaintiff's claims premised on the Payment Notice fail for lack of reliance because "Rothman's deposition testimony … conclusively demonstrates that he *did not consider* the Payment Notice as a substantial part of his decision to enter into the Agreement."  Id. at 18.  Equinox argues that "[w]hen repeatedly asked why he decided to join the Pasadena Club, Rothman said his decision was based on the club's proximity to his home and its "good amenities" and never once mentioned the Payment Notice as a factor (emphasis added)."  Id.

Second, Equinox argues that plaintiff fails to present any evidence that a reasonable consumer would be misled by the Payment Notice.  Equinox argues that plaintiff ignores the context surrounding the Clause, including that the Membership Agreement "(1) is mandated by New York law to address unscrupulous gyms … (2) states that paying a lump sum membership fee could involve financial risk for the consumer … and (3) states that, in deciding whether to make payments on an installment basis, consumers could lose their payments if the club becomes 'unable to meet its financial obligations to Members.'"  Id. at 20-21.  Equinox argues that "[i]n context … the term 'closes' in the Payment Notice … clearly refers to a permanent closure of Equinox's business that potentially would result in the loss of a member's advanced payments if Equinox could not 'meet its financial obligations to members.'"  Id. at 22.

Third, Equinox argues that plaintiff fails to present any evidence that he suffered any harm entitling him to relief under the CLRA, FAL, or UCL.  Id. at 24.  Equinox contends that "Rothman is asking for monetary damages under the CLRA and restitution for unused membership dues, totaling $84.19 for March 17-31, 2020" but that "[b]efore filing this lawsuit, however, Rothman directly contacted Equinox and received the relief he wanted."  Id.  Plaintiff received complete relief, Equinox argues, because "Equinox … fr[oze] [Rothman's] membership for three months and appl[ied] the $84.19 credit toward his future dues, as Rothman requested."  Id.  "Later, Rothman asked Equinox to lift the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

hold and only apply the $84.19 credit to upcoming dues, which Equinox did." Id. Moreover, Equinox argues that "[o]n February 12, 2021, Rothman received a refund to his American Express card from Equinox totaling $188.13 which exceeded the amount claimed in his discovery responses [the *pro rata* value of his membership during these temporary COVID-19 shutdowns in from March 16-31, 2020 and July 14-31, 2020]." Id. at 25.

Fourth, Equinox argues that plaintiff cannot establish a violation of California's gift certificate law, Cal. Civ. Code Section 1749.5, to support his UCL "unlawful" claim because "the undisputed evidence reflects that Equinox did not "sell" Rothman any gift certificate in connection with his "unused" membership fees, nor did Rothman "pay" anything in exchange for the gift certificate." Id. at 26. Equinox argues that because the gift credit issued to Rothman constitute "complimentary gift cards" under Section 26 of Rothman's Agreement and were provided without any consideration, "they do not fall within the statutory meaning of "gift certificate" under California's Gift Certificate Law which requires that the defendant sell the card to the plaintiff for value." Id. at 26-27. Moreover, Equinox argues that because "Rothman received more than the full cash value of the gift credit in February 2021," he suffered no economic injury and thus cannot pursue a UCL claim based on California's gift certificate law. Id. at 27.

Fifth, Equinox argues that plaintiff's claims for equitable relief must be dismissed because he cannot establish that he lacks an adequate remedy at law. Id. at 27. Here, Equinox argues that "Rothman has an adequate remedy at law—he seeks to recover both monetary damages under the CLRA and restitution under the FAL and UCL premised *on the exact same theory of deception and alleged harm* (i.e., that Equinox members were deceived by the Payment Notice and suffered damages in the form of unused membership fees)." Id. at 28. Moreover, Equinox argues that because "it is undisputed that his Agreement constitutes a contract between the parties … *even if Rothman had not pled a CLRA damages claim* – he still had an adequate remedy at law at the time that he filed his lawsuit in the form of a breach of contract claim." Id. (emphases in original).

Sixth, Equinox argues that plaintiff lacks standing to pursue his claims for injunctive relief because he terminated his agreement with, and has no intention to rejoin, Equinox. Id. at 29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

In opposition, plaintiff argues that under California law, to establish the requisite economic injury to support his UCL, FAL, or CLRA claims, he "need only show that the injury in question has a 'causal connection or reliance on the alleged misrepresentation.'" Opp. by plaintiff at 3 (emphases omitted) (quoting Kwikset Corp. v. Sup. Ct., 51 Cal.4th 310, 323 (2011)). Thus, plaintiff argues that he need not show his reliance on the alleged misrepresentation: "Defendant is *legally* required to issue a refund to Plaintiff and every other Class Member for their dues for the periods during which the clubs were temporarily closed. … [I]f Plaintiff and the Class are *contractually* entitled to a refund that they did not receive, they were 'deprived of money… to which he… has a cognizable claim' and there is a 'causal connection' between Defendant's failure to honor its contract and the injury suffered." Id. at 3 (emphases in original) (citation omitted). Plaintiff argues that "even if reliance was a required element, Defendant's Motion would still fail" because there is a genuine dispute as to whether plaintiff relied on Equinox's alleged misrepresentations in the Payment Notice. Id. at 5.

Second, plaintiff argues that he has sufficiently established that Equinox violated the CLRA, UCL, and FAL. Plaintiff asserts "two theories under which Plaintiff and the Class may recover: (1) that the Refund Clause is false and misleading, violating the UCL, FAL, and CLRA (sections 1770(a)(4), (5), (9)) because the Refund Clause *contractually* requires a refund if the club closes, while Defendant's policy is the opposite; and (2) that Defendant's *systematic breach* of the Membership Agreement is unfair under the UCL and a violation CLRA, section 1770(a)(14) … [A]t best, Defendant's Motion only addresses the Class's first theory of liability, and not the UCL and CLRA causes of action as a whole." Id. at 6-7. Plaintiff further argues that "even Defendant's narrow argument fails because … [t]here is only one reasonable interpretation of [the Payment Notice]: Defendant agreed to provide refunds of monthly dues in the event of a club closure." Id. at 8.

Third, plaintiff argues that he has suffered economic injury. Id. at 15. Plaintiff concedes that Equinox provided him with a $84.19 credit to this account; however, plaintiff contends that this credit does not extinguish his claims because 1) defendant was contractually required to provide a refund and not merely an account credit; 2) defendant did not comply with plaintiff's subsequent requests to resolve his dispute. See id. at 15-16. Plaintiff also concedes that "[Equinox] refunded the $188.13 to Plaintiff's credit card on February 12, 2021" but argues that this refund did not moot plaintiff's claims because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

"it was over six months after the case was filed (ECF No. 1) and on the day that Defendant submitted its second Motion to Dismiss (ECF No. 18)," by which point "Plaintiff was seeking not just a refund but statutory damages, interest, costs and attorneys' fees." Id.

Fourth, plaintiff argues that he has a valid UCL claim based on defendant's violation of California's gift certificate law because there is evidence that the $84.19 credit issued to plaintiff was purchased with his monthly dues rather than issued as a promotional gift. Id. at 17.

Fifth, plaintiff argues that this Court has equitable jurisdiction to hear his UCL and FAL claims for equitable relief because his "CLRA claims are still being adjudicated." Id. at 18. Moreover, plaintiff argues that he lacks an adequate remedy for breach of contract against defendant Equinox. Id. at 19.

Sixth, plaintiff argues that he has standing to pursue injunctive relief because "it is undisputed that Plaintiff did not terminate his membership until November 19, 2021, well after the complaint was filed." Id. at 19. Additionally, plaintiff argues that "the [certified] class has standing to assert claims for injunctive relief as well." Id.

In reply, defendant largely reiterates its arguments. Reply at 9-24.

The Court finds that Equinox is not entitled to summary judgment on any of plaintiff's claims. As discussed above, there are genuine disputes as to the merits of plaintiff's claims: whether the Payment Notice would likely mislead a reasonable consumer[5] and as to whether plaintiff and the class materially relied on the Payment

---

[5] At oral argument, counsel for Equinox argued that plaintiff has failed to meet his burden of presenting sufficient evidence to establish the existence of an essential element of his case: a likelihood of deception under the reasonable consumer standard. "Courts have taken divergent approaches in describing the burden a plaintiff must meet at the summary judgment stage in order to show a likelihood that a reasonable consumer would be deceived. Some have said that the 'plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers.' … Other courts have taken a less data-driven approach, requiring only that 'reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Notice in joining Equinox's clubs.  Accordingly, summary judgment in favor of Equinox is not appropriate on either of these grounds.

The Court is unpersuaded by Equinox's argument that plaintiff lacks standing to pursue any claims for damages and restitution because he has not suffered actual injury. Plaintiff seeks damages and restitution in the amount of his paid membership dues for periods during which his Equinox club was closed, namely the periods of March 17-31, 2020 (equivalent to $84.19) and July 14-31, 2020 (equivalent to $100.98).  See opp. by plaintiff at 16; Resp. 1 by defendant ¶ 50.  Moreover, plaintiff seeks statutory damages, interest, costs and attorneys' fees, pursuant to Civil Code, section 1780.  Opp. by plaintiff at 16.  It is undisputed that on June 16, 2020, Equinox provided plaintiff with a $84.19 credit to his Equinox account.  Resp. 1 by plaintiff ¶ 31.  However, this credit does not deprive plaintiff of standing to pursue his claims because a credit is not a refund that is the core of the relief that plaintiff seeks.  Moreover, even if a $84.19 refund had been issued to plaintiff, he has presented sufficient evidence that he had standing to pursue claims in excess of $84.19 at the time he filed suit on August 7, 2020.  Slayman v. FedEx

---

minds could differ' in order to find a triable issue of fact as to whether a reasonable consumer would be deceived." Rahman v. Mott's LLP, No. CV 13-3482 SI, 2014 WL 5282106, at *8 (N.D. Cal. Oct. 15, 2014) (citing cases); see also Park v. Cytodyne Techs., Inc., No. GIC 768364, 2003 WL 21283814, at *5 (Cal. Super. Ct. May 30, 2003) ("[T]o establish that advertising is misleading under a reasonable consumer test should not require the use of consumer surveys. Considering that the advertisement speaks for itself, the judge is in a position to determine whether it is misleading, i.e. likely to deceive, under a 'reasonable consumer' standard."); Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (relying on judicial "common sense" to find that "[defendant's] advertising was not likely to deceive a reasonable consumer"); but see Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1026 (9th Cir. 2008) ("[A] plaintiff must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.' … Surveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required; anecdotal evidence may suffice, although 'a few isolated examples' of actual deception are insufficient.") (citation omitted).  The Court finds that because reasonable minds could disagree as to whether a reasonable consumer would likely be deceived by the Refund Clause, there are genuine disputes as to the merits of plaintiff's claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Ground Package Sys., Inc., 765 F.3d 1033, 1047 (9th Cir. 2014) ("When evaluating whether [the standing] elements are present, we must look at the facts as they exist at the time the complaint was filed."); Cent. Delta Water Agency v. United States, 306 F.3d 938, 947 (9th Cir. 2002) ("[A]t the summary judgment stage the plaintiffs need not establish that they in fact have standing, but only that there is a genuine question of material fact as to the standing elements.").

Plaintiff has also presented sufficient evidence that he has standing to pursue his claims for injunctive relief because it is undisputed that plaintiff did not terminate his Equinox membership until November 19, 2021, well after the complaint was filed. Slayman, 765 at 1047 ("When evaluating whether [the standing] elements are present, we must look at the facts as they exist at the time the complaint was filed.").

Nor did Equinox's subsequent payments to Rothman—after he filed suit—moot his claims. It is undisputed that on February 12, 2021, Equinox paid plaintiff $188.13, an amount that exceeded the value of Rothman's membership during the Equinox club shutdowns (equivalent to $84.19 for the club closure period of March 17 to 31, 2020 and $100.98 for the period of July 14-31, 2020). Resp. 1 by defendant ¶ 50. It is also undisputed that Equinox paid plaintiff $10 on May 7, 2021. Id. ¶ 53. However, these payments did not moot plaintiff's claims because they did not provide plaintiff the complete relief he seeks, which includes not only a refund for periods during which his Equinox home club was closed (or statutory damages for the class under the CLRA[6]), but also interest, costs, and attorneys' fees. See generally dkt. 15 (First Amended Complaint). See Mahonak v. Rubio, No. 8:24-CV-01443-FWS-DFM, 2025 WL 449044, at *9 (C.D. Cal. Feb. 10, 2025) ("An individual claim 'becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation,' Chen v. Allstate Ins. Co., 819 F.3d 1136, 1144 (9th Cir. 2016), and it is 'impossible for a court to grant any effectual relief whatever to the prevailing party,' Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307 (2012).").

Because plaintiff's damages and restitution claims were not mooted prior to class certification, the class's claims are not moot, either. Slayman v. FedEx Ground Package

---

[6] Under the CLRA, any consumer who suffers damage may bring an action to recover, among other things, "[a]ctual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Sys., Inc., 765 F.3d 1033, 1048 (9th Cir. 2014) ("If the district court certifies a class before the plaintiff's claim becomes moot, 'mooting the putative class representative's claim will not moot the class action.'") (citation omitted). But even assuming arguendo that plaintiff's damages and restitution claims were mooted by Equinox's payments to plaintiff *prior* to class certification, the putative class's claims would not have been mooted by Equinox's payments to Rothman. See Chen, 819 F.3d at 1147 ("[W]hen a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, *but fails to offer complete relief on the plaintiff's class claims*, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification.") (emphases added) (citing Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 165 (2016)); U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 404 (1980) ("We therefore hold that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied."); 5 Moore's Federal Practice § 23.64[1][b] (3d ed. 2016) ("To the extent that defendants may avoid a class action by 'picking off' the named plaintiffs, the class claims are 'inherently transitory' and evade review, making an exception to the mootness rule appropriate.").

It follows that even if plaintiff's claims for injunctive relief were mooted prior to class certification on October 15, 2024,[7] this did not moot the class's claims for injunctive relief. Equinox's citation to Sosna v. Iowa, 419 U.S. 393, 399 (1975) supports, rather than undermines, this conclusion. Id. at 402 ("There must … be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23 …. The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, *even though the claim of the named plaintiff has become moot.*") (emphases added).

Thus, Equinox is not entitled to summary judgment on plaintiff's and the class's damages or restitution claims on standing or mootness grounds because plaintiff and the

---

[7] This is the case because plaintiff terminated his Equinox membership on November 19, 2021, and Rothman has no present intention of re-joining Equinox in the future. Resp. 1 by defendant ¶¶ 56, 78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

class have not been afforded the complete relief they seek and because there is a genuine dispute as to whether plaintiff and the class suffered economic injuries cognizable under the FAL, CLRA, and UCL.

Equinox is not entitled to summary judgment on plaintiff's UCL "unlawful" claim predicated on a violation of California's Gift Certificate Law, which provides that "[i]t is unlawful for any person or entity *to sell* a gift certificate to *a purchaser* that contains . . . [a]n expiration date." Cal. Civ. Code § 1749.5(a) (emphases added). The law, however, does not apply to "[g]ift certificates that are distributed by the issuer to a consumer pursuant to an awards, loyalty, or promotional program *without any money* or other *thing of value being given in exchange* for the gift certificate by the consumer." Id. § 1749.5(d)(1) (emphases added). Section 1749.5(b)(1) further provides that "[a]ny gift certificate sold after January 1, 1997, is redeemable in cash for its cash value, or subject to replacement with a new gift certificate at no cost to the purchaser or holder."

Here, there is a genuine dispute as to whether the $84.19 credit that plaintiff received from Equinox was a promotional customer service gesture or whether Rothman effectively purchased it for value with his unused membership dues. Moreover, as explained, Equinox's payments to plaintiff of more than the full cash value of the gift credit in February 2021 did not moot his or the class's claims because the payments did not grant all of the relief that he or the class could receive on his UCL claim. See Chen, 819 F.3d at 1144. Accordingly, Equinox is not entitled to summary judgment on plaintiff's and the class's UCL "unlawful" claim predicated on California's Gift Certificate Law.

Finally, the Court is also unpersuaded by Equinox's argument that plaintiff's equitable claims under the FAL and UCL must be dismissed because plaintiff fails to demonstrate that he lacks an adequate remedy at law. The Court finds that the Ninth Circuit's decisions in Sonner and Guzman do not preclude plaintiff from simultaneously pursuing his CLRA, FAL, and UCL claims at this stage. In Sonner, the "[plaintiff] voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief." Sonner v. Premier Nutrition Corp., 971 F.3d 834, 837 (9th Cir. 2020). In this context, the Ninth Circuit, affirming the district court's denial of plaintiff's request to pursue equitable relief, held

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|---|---|---|---|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

that "[a plaintiff] must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." Id. at 843.

In Guzman, the Ninth Circuit reaffirmed Sonner's holding that "under [the] federal inadequate-remedy-at-law principle, if … plaintiffs had an adequate legal remedy under the CLRA, they could not also maintain equitable claims under the UCL and CLRA in federal court." Guzman v. Polaris Indus. Inc., 49 F.4th 1308, 1312 (9th Cir. 2022). The Ninth Circuit also clarified that "Sonner's holding applies … regardless of whether the plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship … [such as strategic pleading] to avoid a jury trial." Id. at 1313. Guzman involved a plaintiff who had brought an equitable UCL claim and a time-barred CLRA claim for damages; the Ninth Circuit affirmed the district court's dismissal of the plaintiff's equitable UCL claim because "equitable relief must be withheld when an equivalent legal claim [i.e., the plaintiff's CLRA claim] would have been available but for a time bar." Guzman v. Polaris Indus. Inc., 49 F.4th 1308, 1312 (9th Cir. 2022). The Ninth Circuit did not, however, squarely address the issue presented by defendant's motion here: whether a plaintiff in federal court may simultaneously pursue a CLRA claim for damages and equitable UCL and FAL claims all predicated on the same theory of deception and alleged harm without first alleging that he lacks an adequate legal remedy under the CLRA. See mot. at 2-4; Guzman, 49 F.4th at 1312-13.

The argument that a plaintiff may plead equitable remedies in the alternative and without pleading the inadequacy of legal remedies "has been explicitly rejected by numerous courts post-Sonner." Clevenger v. Welch Foods Inc., No. SACV 20-01859-CJC (JDEX), 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (collecting cases). Nonetheless, this Court disagreed with these district courts when it found that a plaintiff may plead unjust enrichment in the alternative to breach of contract before making an election of remedies. Regions Bank v. Car Wash Mgmt., LLC, No. 2:25-CV-00359-CAS-KSX, 2025 WL 2765231, at *14 (C.D. Cal. Sept. 25, 2025). See also Pasture Gate Holdings, Inc. v. Gruzd, No. 3:24-CV-00886-L-BJC, 2025 WL 1435526, at *6 (S.D. Cal. May 19, 2025).

Here, Rothman and the class seek relief in the alternative under the CLRA, FAL, and UCL. Their claims are properly pled under Fed. R. Civ. P. 8(a)(3) ("a demand for the relief sought … may include relief in the alternative or different types of relief") and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-cv-09760-CAS-MBKx | Date | January 26, 2026 |
|----------|------------------------|------|------------------|
| Title | Jason Rothman v. Equinox Holdings, Inc. | | |

Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Because plaintiff and the class have not prevailed on their CLRA claim for damages, the Court finds that it is not appropriate to enter judgment on their equitable claims at this stage.

Accordingly, Equinox is not entitled to summary judgment on any of plaintiff's and the class's claims.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's motion for partial summary judgment.

The Court **DENIES** defendant's motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 19 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |